**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

ROGER COUSINEAU, SR.,            :
                                 :   Civil Action No. 04-0515 (FLW)
           Petitioner,           :
                                 :
      v.                         :   **OPINION**
                                 :
C.J. DeROSA, Warden, et al.,     :
                                 :
           Respondents.          :

**APPEARANCES**:

Petitioner pro se                Counsel for Respondent
Roger Cousineau, Sr.             John Andrew Ruymann
FCI Fort Dix (West)              402 East State Street
5802                             Room 430
P.O. Box 7000                    Trenton, NJ 08608
Fort Dix, NJ 08640

**WOLFSON**, District Judge

    Petitioner Roger Cousineau, Sr., a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
      (a) Writs of habeas corpus may be granted by
      the ... district courts ... within their
      respective jurisdictions ...
      (c) The writ of habeas corpus shall not
      extend to a prisoner unless- ... (3) He is in
      custody in violation of the Constitution or
      laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I. BACKGROUND

Petitioner is serving a sentence of 235 months imprisonment to be followed by five years supervised release.

During December 2002 and January 2003, the Special Investigative Section ("SIS") at FCI Fort Dix conducted an investigation to determine whether Petitioner was having unauthorized contact with the public. During the investigation, Petitioner was confined to Administrative Segregation. As a result of that investigation, it was determined that Petitioner and Antonette Tomasello, an employee of the Department of Public Works at FCI Fort Dix, and the woman Petitioner identifies as his fiancee, first had contact with one another after Petitioner was confined at FCI Fort Dix. Although the investigating officer determined that Petitioner had not committed the prohibited act of unauthorized contact with the public, he did recommend that Petitioner receive a greater security transfer and the assignment of a management variable.

Ms. Tomasello was then removed from Petitioner's visiting list because there was no evidence that a relationship had existed prior to Petitioner's confinement.

In response to the investigation, the Northeast Regional Office approved Petitioner's transfer from the FCI Fort Dix

satellite Camp to the FCI Fort Dix low-security institution and the assignment of a management variable.  These actions were based upon a determination that Petitioner was not appropriate for Camp placement because of his relationship with a civilian working on the Fort Dix military installation and the fact that Camp inmates have access to the public and have the ability to move freely around the military installation.

In this Petition, Petitioner contends that he was deprived of his rights under the Due Process Clause of the Fifth Amendment and under the Eighth Amendment by his placement in Administrative Segregation, by his increased security classification, and by his loss of visits with Ms. Tomasello.

Respondents concede that Petitioner has exhausted his administrative remedies with respect to the removal of Ms. Tomasello from his visiting list.  Respondents assert that Petitioner has not exhausted his administrative remedies with respect to his other claims.  Respondents assert also that Petitioner's claims may not proceed by petition under § 2241, whether exhausted or not, because they challenge his conditions of confinement rather than the validity or length of his sentence.  Finally, Respondents argue on the merits that Petitioner has not been deprived of any constitutional rights. Petitioner has filed no reply in support of his Petition.

## II. LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## III. ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the

length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).  Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

To the extent a prisoner challenges sanctions affecting his conditions of confinement, however, such claims must be raised by way of a civil rights action.  See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002).  Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do not accrue until the sanction has been invalidated through reversal on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477 (1994).  Thus, this Court can award no relief related to

those sanctions that affect only the conditions of Petitioner's confinement.

Here, whether characterized as a habeas claim related to a "quantum change" in the level of confinement or a civil action for injunctive relief, the result would be the same. Accordingly, no purpose would be served by requiring Petitioner to re-plead.

B.   Petitioner's Claims

Petitioner contends that he was deprived of liberty without due process as a result of the changes in his confinement and visitation rights. A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the

Due Process Clause in freedom from involuntary administration of psychotropic drugs); <u>Vitek v. Jones</u>, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). <u>See also</u> <u>Asquith</u>, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of

7

Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.  The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Id.

Here, Petitioner was confined in administrative segregation for a total of 21 days, during the pendency of the SIS investigation, after which he was transferred from the Camp to the low-security institution.  Neither of these actions imposed an "atypical and significant hardship" on Petitioner.  In addition, it is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.  There is no due process violation in these actions.

Nor was there any constitutional violation in the removal of Ms. Tomasello from Petitioner's visiting list.  "In the First

Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented and finalized, 457 F.Supp. 984 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).

     Here, Petitioner does not complain that he was denied all visitors or that his means of communicating with his fiancee were completely terminated.  The removal of one individual from the visiting list, without any other limitation on communication with that individual, does not rise to the level of a First Amendment

9

violation. Nor does it impose an "atypical and significant hardship" in violation of the Due Process Clause.

Finally, none of these events constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme

10

deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, neither temporary confinement in administrative segregation, transfer to a low-security institution, nor deprivation of visits from one individual deprives Petitioner of 'the minimal civilized measure of life's necessities.' There is no Eighth Amendment violation here.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

<u>S/Freda L. Wolfson</u>
Freda L. Wolfson
United States District Judge

Dated: September 8, 2005